IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:08CV156

| | |
|---|---|
| VOLVO ROAD MACHINERY, INC., )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>J. D. EVANS, INC., )<br>)<br>Defendant. )<br>) | MEMORANDUM AND<br><u>O R D E R</u> |

**THIS MATTER** is before the Court on Defendant's motion to dismiss or, alternatively, to transfer the action to the United States District Court for the District of South Dakota. **Defendant's Motion to Dismiss or, Alternatively, Transfer to the District of South Dakota ["Defendant's Motion"], filed July 23, 2008.** The Plaintiff opposes the relief sought. **Plaintiff's Response to Motion to Dismiss or, Alternatively, Motion to Transfer ["Plaintiff's Response"], filed August 6, 2008.** For the reasons stated below, the Court grants Defendant's motion to transfer this action to the District of South Dakota for disposition.

## I. FACTUAL AND PROCEDURAL HISTORY

The Defendant J. D. Evans, Inc. ("Evans"), a South Dakota corporation, was a dealer for Ingersoll-Rand ("IR") road machinery and air compressor products for a number of years. **See Complaint, filed April 15, 2008, ¶ 2; Defendant's Motion, at 1.** The terms of the relationship were contained in a written Distributor Agreement between IR and Evans. *Id*. In May 2007, IR sold its road machinery business to the Plaintiff Volvo Road Machinery, Inc. ("Volvo"). *Id*. At that time, Volvo had an established national dealership network, and in order to consolidate the IR product line with existing Volvo products, Volvo terminated the Evans' dealer franchise and offered Evans a new contract in the form of a Volvo Dealer Agreement. *Id*. **at 2.** Evans considered the proposed agreement and refused to sign the agreement alleging it "contained numerous illegal and unacceptable conditions." *Id*. As a result, Volvo refused further direct sales to Evans and referred Evans to its Volvo dealer in Sioux Falls. *Id***. at 3.** Following unsuccessful efforts by both parties to reach an agreement, litigation between the parties began.

On April 15, 2008, Volvo filed its complaint in this Court for declaratory relief alleging proper venue pursuant to 28 U.S.C. §§

1391(a)(2) and (c) contending that "a substantial part of the events giving rise to Volvo's claim occurred in this State and in this district[.]" **Complaint, *supra*, ¶ 5.** The complaint seeks declaratory judgment that (1) Volvo is not a party or assignee of any IR right, title or interest in the 1995 Distributor Agreement between IR and Evans; (2) Volvo is not a party or assignee of any right, title or interest in the 2007 Distributor Agreement between IR and Evans; (3) that Evans is prohibited from attempting to enforce against Volvo any contractual rights or remedies contained in the 1995 or 2007 agreements between IR and Evans; (4) that in order for Evans to do business with Volvo it must enter into a written contract with Volvo as a condition precedent; and (5) that Volvo is not required by law to conduct business with Evans absent a written contract between the parties. *Id*. **¶ 14.**

On April 25, 2008, Evans filed its complaint against Volvo and other related companies in the U.S. District Court for the District of South Dakota (the "South Dakota case"). On May 16, 2008, Volvo filed a motion in the South Dakota case to transfer that case to this Court. **See Exhibit 1, Civil Docket for Case #: 4:08-cv-04059-LP**, *attached to* **Plaintiff's Response.** On July 15, 2008, U.S. District Court Judge Lawrence J. Piersol, entered

an order wherein he noted a familiarity with the heavy caseloads of this District and considering the interest of judicial economy, verified by contact with the undersigned, concluded a transfer decision should be made by this Court as the "first filed" Court and held the South Dakota case in abeyance for 90 days. **See Exhibit 2, Order of Judge Piersol,** *attached to* **Plaintiff's Response.**

On September 18, 2008, this Court heard arguments of the parties regarding the motion to transfer to the District of South Dakota. After review of the parties' pleadings herein, and the arguments of counsel, the Court finds the motion should be allowed for the reasons set forth below.

## II. DISCUSSION

As to the parties Volvo and Evans, the issues to be resolved here are identical to those outlined in the South Dakota case. In that case, Evans joins as additional parties to its alleged causes of action the interrelated parties Volvo Group North America, Inc., Volvo Construction Equipment North America, Inc., and Ingersoll-Rand Company. In considering the complaint in the South Dakota case, it is clear that the basic issues in both law suits are the same and that judicial economy would best be served by

transferring the North Carolina declaratory action to South Dakota where the issues between Volvo and Evans, as well as the additional related parties, would be litigated.

Evans contends that this action must be dismissed or transferred to South Dakota because Evans has not had minimum contact in this state sufficient to satisfy constitutional requirements for personal jurisdiction. However, Volvo sets forth a series of continuous contacts in North Carolina between it and Evans as well as Evans contact with another North Carolina manufacturer, LeeBoy. **Plaintiff's Response,** *supra*, **at 9-16.**

Personal jurisdiction is generally established in one of four ways: consent to jurisdiction by the defendant; service of process upon the defendant in the forum state; the defendant is domiciled in the forum state; and *via* the forum state's long arm statute. **16 *Moore's Federal Practice*, §§ 108.20-108.23 (Matthew Bender 3d ed.).** Inasmuch as Evans has not consented to this Court's jurisdiction, has not been served within this state, nor is it domiciled in this state, personal jurisdiction over Evans can only exist by way of North Carolina's long arm statute.

The North Carolina Supreme Court has held, "[b]y the enactment of [the North Carolina long arm statute, N.C. Gen. Stat. § 1-75.4(1)(d)], it is

apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." **Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).** The Supreme Court of the United States has held that due process allows a court to exercise personal jurisdiction over an individual if the individual has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" **Int'l Shoe Co. v. State of Washington, Office of Unemployment Comp., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).** Minimum contacts with a forum state cannot exist unless "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." **Hanson v. Denckla, 357 U.S. 235, 253 (1958).**

Personal jurisdiction can be either general or specific. **Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984).** General jurisdiction refers to a court's ability to exercise jurisdiction over a defendant based upon continuous, systematic, and substantial connections

with the forum, whereas specific jurisdiction allows a court to adjudicate claims arising from a defendant's activities or contacts with the forum state. **16 *Moore's Federal Practice, supra*, at § 108.40.**

"When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." ***Helicopteros*, 466 U.S. at 414 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).** "Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation. . . . Personal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." ***Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 513-14 (D. Md. 2004).** Specifically, the Fourth Circuit has held that personal jurisdiction cannot be established based solely upon an individual's telephone calls or letters sent to the forum state. ***See Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 137 (4th Cir. 1996).** "To conclude that such activity establishes presence in a state would upset generally held expectations . . . and redefine the nature of state sovereignty." ***Id.***

(citing **Craig v. Gen. Fin. Corp.**, 504 F. Supp. 1033, 1038-39 (D. Md. 1981)).

Here, Volvo shows that Evans' contacts with this state were more than a few simple letters. **Plaintiff's's Response, at 14-15;** *see also,* **Exhibit 3, Declaration of Christopher S. Young and attached Exhibits,** *attached to* **Plaintiff's Response.** There are letters, phone calls, request for a contract, and discussion of the nature of same, parts orders, allowances for returned parts, *etc.* These amount to "certain minimum contacts with [North Carolina] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." ***Int'l Shoe, supra*, at 316 (quotations omitted).** These contacts also show continuous, systematic, and substantial connections with North Carolina. **16 *Moore's Fed. Practice*, *supra*.** This Court, therefore, concludes that it has personal jurisdiction over Evans. But having jurisdiction does not require that the case remain in this District.

Volvo also references the "first filed rule." **Plaintiff's Response, at 20.** The Fourth Circuit recognizes the "first to file" rule of the Second Circuit which gives "priority to the first suit absent showing of a balance of convenience in favor of the second." ***Learning Network, Inc. v.***

*Discovery Commc'ns*, 11 F. App'x 297, 300-01 (4th Cir. 2001) (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)) (other citations omitted). This rule applies whether or not the first filed action is a declaratory action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated on other grounds by*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). However, while the Court should give substantial weight to Volvo's choice of forum and the "first filed rule," neither is controlling and other factors must be considered. *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 237 (D. Conn. 2003).

Title 28, United States Code, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." **28 U.S.C. § 1404(a).** Volvo dos not dispute that this action could have been properly filed in South Dakota, the home state and district of Evans.

> [T]he purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . . To this end it empowers a district court to transfer any civil action to another district court if the transfer is warranted by the

> convenience of parties and witnesses and promotes the interests of justice.

***Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted).** Numerous reasons have been given by various courts in ordering or denying a change of venue for a particular case. "Wisely it has not been attempted to catalogue the circumstances which will justify or require grant or denial of transfer. Given the statutory standards the decision is left to the sound discretion of the court." ***Brown v. Woodring*, 174 F. Supp. 640, 644 (M.D. Pa. 1959).**

The statute does not set burden of proof standards for the various factors considered by the Court and "the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." **15 Wright, Miller & Cooper, *Fed. Practice & Procedure*: *Jurisdiction 2d*, § 3847 (2005).**

The portion of § 1404(a) which permits transfer of a civil action to another district or division where it might have been brought for convenience of parties and witnesses in the interest of justice, does not limit the Court's discretion in making a transfer to the factors specifically

mentioned herein, though they are important. ***Ferri v. U.S. Dep't of Justice***, 441 F. Supp. 404 (M.D. Pa.).

The main locus of the controversy is South Dakota where a dealership (Evans) selling Ingersoll-Rand and Volvo products among others, contends it has been denied a reasonable contract to Volvo's product line. This consideration favors the Defendant Evans. The major impact of the final decision, whatever it may be, will result to Defendant, not Volvo. Volvo is an international corporation not a local dealership. The parties involved in its lawsuit in South Dakota along with its witnesses can be more easily and conveniently made available to the South Dakota court, the locus of the alleged wrong. Evans contends that South Dakota law will have major impact on the issues of the case, in which event a familiarity with local law will more likely be with the South Dakota Court, who is a resident of the area. Access to business records relating Evans will be more easily available to the parties in South Dakota, and evidence regarding Evans' operation and finances will likely involve local witnesses. The travel of witnesses from South Dakota to Western North Carolina would be time consuming and expensive. From appearances, Volvo will have a limited number of fact witnesses, while Evans would expect to have

a larger number.  **See Defendant's Motion, at 22.**  "Given the fact that, when possible, live testimony is preferred over other means of presenting evidence, the convenience of non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue."  ***Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d. 1352, 1356 (N. D. Ga. 2004) (citing *State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 197 (S.D. Tex. 1994)).**  In addition, process to require attendance of witnesses would be readily available to the South Dakota Court.

It is also noted that case congestion in this District is more of a problem.  In the twelve month period ending September 30, 2007, there were 210 civil case filings per judge in this District; while in the District of South Dakota, the number of civil case filings per judge was 139.  Thus, the parties would likely benefit from a more expeditious disposition of the case in South Dakota than here.

As previously noted, this case would not fully determine the entire controversy because it does not include the additional parties in the South Dakota action.  **See Defendant's Motion, at 24.**

The Court, having considered the above reasons why this case should be transferred, the issues of anticipating filing or race to the courthouse need not be addressed.

## III.  ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's alternative motion to transfer is **ALLOWED**, and this action is hereby transferred to the United States District Court for the District of South Dakota, Southern Division.

Signed: October 16, 2008

Lacy H. Thornburg
United States District Judge